CHARLES A. WORCH, HARRY C. FAIRCHILD and ROBERT S. JOHN

*v.*

WILLIAM THOMPSON WOODRUFF.

[Submitted November 23d, 1900.  Decided December 15th, 1900.
Filed June 4th, 1901.]

1. Defendant gave plaintiffs an option to purchase a tract of land, sufficiently described, or such portion thereof as they might elect to purchase. The description given in plaintiffs' demand for a conveyance of a part of the premises called for a strip of land situated on the north side of a certain highway, which constituted the southern boundary of the land, "such strip extending the entire length of the tract, and extending in depth 50 feet from the western boundary to a point 20 feet west of where a dwelling-house is situated, and extending 150 feet in depth from that point to the eastern boundary of the property.—*Held*, in an action for specific performance of the contract, that the description given in the demand was sufficiently explicit.

2. The ascertainment of the precise quantity of land to be conveyed, and the amount to be paid, in accordance with an option to purchase at a specified price per acre, is not a prerequisite to the vendee's right to demand a conveyance before bringing suit for specific performance, where the number of acres is not stated in the description, but such matters belong to proceedings in the master's office after the question of the right to specific performance is determined.

3. A vendee is not required to make such a tender as will sustain a plea of tender in an action at law in order to maintain a suit for specific performance of a land contract, but it is sufficient if he is ready and willing to pay the contract price at the time fixed.

On bill for specific performance of contract to convey land, and demurrer thereto.

The facts set forth in the pleading are as follows: That the defendant, on the 12th of April, 1900, was the owner of a tract of thirty acres of land described as follows:

"Lying on the South side of the road from Salem, New Jersey, to Union, New Jersey, and on the North side of the road leading from Morris Avenue, to Irvington, New Jersey, known as the David E. Woodruff farm;"

and on that day entered into a written agreement with Charles A. Worch, one of the complainants, as follows:

"Whereas, William Thompson Woodruff, of Newark, N. J., hereinafter designated as the party of the first part, is the owner of certain lands described as follows, to wit: Thirty acres lying on South side of road, Salem, N. J., to Union, N. J., and on the North side of road leading from Morris Avenue to Irvington, N. J., known as the David E. Woodruff farm; and,

"Whereas, Charles Alfred Worch, of Brooklyn, N. Y., hereinafter described as the party of the second part, is desirous of acquiring an option for the purchase of said lands;

"Now, therefore, this agreement witnesseth, that the party of the first part, in consideration of the sum of two hundred dollars, lawful money of the United States, to him in hand paid by the party of the second part, the receipt of which is hereby acknowledged, promises and agrees that he will sell and transfer to the party of the second part, his nominee or assigns, at any time before August 1st, 1900, at such time or times during the said period as the party of the second part, his nominee or assigns may elect, the whole of said above described land or any part thereof, free and clear of all encumbrances, at the rate of $150 per acre and the party of the first part further agrees that he will from time to time during the life of this option, upon ten days' notice in writing by the party of the second part, his nominee or assigns, execute and deliver to the party of the second part, his nominee or assigns, a warranty deed or deeds to the whole of said land or such part or parcel thereof as the party of the second part, his nominee or assigns may elect to purchase, upon the payment to him, the said party of the first part, of the purchase price of the same at the above mentioned rate of $150 per acre, said deed or deeds to contain no covenants or restrictions of any kind as to the future use of said land or any part thereof. It is further agreed by party of first part to credit $100 of the $200 to-day paid in on the purchase of the land by party of first part."

That afterwards, on May 24th, Worch assigned the contract to himself and the other two complainants; that afterwards, on or about the 13th of July, the complainants made a demand on the defendant for a conveyance of a portion of the premises as follows:

"Take notice, that we demand of you forthwith a warranty deed for a strip of land situated on the North side of the road leading from Morris Avenue to Irvington, N. J., in the township of Union, County of Union and State of New Jersey, a part of the property known as the David E. Woodruff farm; the plot of ground herein desired is a strip of land extending the entire length of the said Woodruff farm along the aforesaid road, and extending in depth 50 feet, from the Western boundary of the · said Woodruff farm to a point 20 feet to the West of where a dwelling house is situated, and extending 150 feet in depth from that point to the Eastern boundary of the said property. The strip of land aforesaid which we herewith demand comprises the entire frontage of the aforesaid prop-· erty on the road leading from Morris Avenue to Irvington, N. J.

"We herewith demand the aforesaid deed in accordance with a written · option bearing date April 12, 1900, and 'made by you with Charles A. Worch of Brooklyn, and subsequently assigned to the said Charles A. Worch, Robert S. John and Harry C. Fairchild, which said option was duly recorded in the Union County Clerk's Office in book 365 of deeds for said county, on pages 583, &c.; and we herewith desire you to notify us when the deed will be ready for delivery and then we will pay you the consideration for said land in accordance with the terms of the aforesaid option."

That within ten days after the service of the notice, to wit, on the 23d of July, the complainants called on Woodruff at his place of business, and then and there tendered him

"the sum of money required by the said agreement, in legal tender, and requested him to deliver unto your orators a deed of the land and premises more particularly described and mentioned in said written demand,"

and that they have always been ready and willing, and are still ' ready and willing, to pay the purchase-price and comply in all · respects with the provisions of the agreement, upon receipt of a . proper deed of conveyance in fee-simple. That the defendant has wholly refused to deliver a deed of conveyance.

The bill contains the ordinary prayer for specific performance, . with tender on the part of the complainants to specifically per- · form on their part by paying the purchase-price.

*Mr. Thomas Anderson,* for the demurrant.

*Mr. Jacob L. Newman, contra.*

PITNEY, V. C.

Several special causes of demurrer are assigned, but they may be considered as two. First, that the description given in the demand for a conveyance of a part of the premises is not sufficiently explicit.

In estimating the value of this point it must be borne in mind that the farm was bounded on the north and south by public highways—the road from Salem to Union was on the north side, and the road from Morris avenue to Irvington was on the south side. The description given is of a portion of the land lying on the north side of the latter road, and it is a strip extending the entire length of the farm along that road, and is fifty feet deep for a portion of the distance, viz., commencing on the western boundary of the land, and running from there easterly, of course, to a point twenty feet westward of where a dwelling-house is situated. I think that point—"twenty feet to the west of where a dwelling-house is situated"—is sufficiently determined. It would be ascertained by measuring twenty feet parallel with the road westerly from the most westerly portion of the house, and dropping a line from that point perpendicularly to the road. From that point east the tract taken is one hundred and fifty feet in depth, measured from the road.

It is suggested that there may be more than one dwelling-house on the premises. It is not so stated in the bill, and I think there can be no presumption of that kind; but, if there were, the depth of fifty feet would stop at the first dwelling-house which is reached, commencing at the westerly boundary of the farm.

It must be recollected in this connection that the presumption is that the muniments of title of the farm are in the possession of the defendant, and he will be assisted in locating the land by the use of those conveyances. I think that an ordinary land surveyor will have no difficulty in locating the tract on the ground. Whether the depths of fifty and one hundred and fifty

feet, respectively, shall be measured from the side or center of the road is a matter depending on the true construction of the contract, and if the parties differ it is to be settled by this court.

For these reasons I am of the opinion that the description of the land to be taken is on its face sufficiently definite.

The next objection is that the quantity of the land is not stated, and presumably was not ascertained by the complainants at the time of making the demand, and that the ascertainment of the quantity was a prerequisite to a demand of the conveyance, because the amount of purchase-price to be paid could not be otherwise ascertained.

But I think the maxim *id certum est quod certum reddi potest* applies to this and the former objections.

But still demurrant insists that it was a condition precedent to demanding a conveyance that the complainants should ascertain the quantity of land, and from it the amount of money to be paid, and that the statement of the offer to pay the money is insufficient because it does not state the amount which was offered.

The arguments of the complainants in answer to this position are—*first,* that naturally it is the duty of the vendor to ascertain and fix the amount of the price, where it remains to be fixed by any kind of measurement; *second,* that the averment of an offer to pay is sufficient in this case because the complainants state in their bill that they offered to pay the purchase-price, which means the amount which the defendant might justly state to be due him; and *third,* that by the bill it appears that the defendant's refusal to perform was general, and not based on any failure of complainants to ascertain, on their own account without the aid of the defendant, the quantity of the land or the amount of money to be paid; and the complainants urge that it was the duty of the defendant either to ascertain for himself the quantity, or to propose, what is quite usual in such cases, a joint survey and measurement.

I think that the complainants have the better of this argument.

But of both of defendant's points it is to be remarked that he seems to be standing on the very *apices litigandi.* I think it quite clear that the fixing of the precise quantity of the land

and of the purchase-price was not a condition precedent to the complainants' right to commence their suit for specific performance of the contract. Those matters, as well as the determination of the sufficiency of the deed and its execution, naturally belong, under the practice in suits for specific performance, to proceedings in the master's office, after bill filed and answer, if any, and after the question of the right to the specific performance of the contract is settled. According to the English practice, where the suit is by vendor against vendee, the question whether the complainant can make a good title is referred to a master; also in all cases the precise amount of purchase-price, according to the contract, if that amount is not, as here, settled by the contract; also the question of interest and *mesne* profits, and the verbiage of the conveyance. The practice will be found referred to in *Dan. Ch. Pr. (5th ed.)* *988, *992, *1215, *1221;  also, see *Seton Dec. (ed 1831)* 209, 212. with notes.

To illustrate: Suppose, in this instance, the complainants had employed a surveyor to survey this land, and had, on his report, fixed the acreage at so many acres and so many hundredths of an acre, and had demanded a conveyance of that, and had tendered the price fixed on that basis, all in good faith, and suppose the defendant had made an independent survey, and his surveyor had reported a greater quantity of land than the complainants' surveyor, and, the parties not agreeing, complainants should file a bill, and at the hearing it should be determined that the defendant's surveyor was right and the complainants' surveyor wrong, would the complainants, in the absence of bad faith, thereby lose their right to a specific performance? I think there can be but one answer to that question—they certainly would not.

So, if a dispute should arise as to the sufficiency of the deed of conveyance offered; if the complainants should make improper objections to the form or execution of the deed, and refuse to accept it, and file their bill, and at the hearing the defendant should be held to be right, it would not necessarily follow that the complainants would lose their right to specific performance.

Or, again, suppose the suit be by the vendor against the vendee, and the written contract provides that the vendor should convey free and clear of encumbrance, and there should be a mortgage upon the premises which the vendor expected to pay out of the purchase-money, and he should appear at the time and place fixed for the performance, with the mortgagee or his attorney, ready to receive the money and cancel the mortgage, could the vendee set up, in defence to a suit for specific performance, that the vendor failed to pay the mortgage and have it canceled before the moment of passing the title?

In short, the objections set up by the defendant by way of demurrer are all mere matters of detail which, if not previously amicably arranged between the parties, are to be determined by the court in the progress of the suit; and if the complainants' action has been in good faith they will not lose their right to specific performance by having made a mistake in any of these details, but compensation for delay to the defendant may be made by way of payment of interest, and the complainants may be punished for any such mistakes by being refused their costs.

So, with regard to the offer to pay at the time and place fixed, I do not understand that in a suit by vendee against vendor the vendee must, as a condition precedent to the right to maintain his suit for specific performance based on a contract in the ordinary form, make an actual tender of lawful money, such as would sustain a plea of tender in an action at law. It is sufficient if he was ready and willing to pay at the time and place, if any, fixed, after having inspected, and being satisfied with the deed of conveyance offered by the defendant.

For these reasons I will advise that the demurrer be overruled, with the usual results, and upon the usual terms.