This bill is by a purchaser to compel the specific performance of a contract to convey lands with a house and garage to be built thereon, to be finished and deed to be delivered November 1st, 1924. The house and garage were not completed and ready for occupancy untl the 23d of the month, and then not in certain details, for which the complainant asks for an abatement of the purchase price. While the parties were negotiating the amount of the abatement, Tepperman, the owner, conveyed the property to Levenson, the builder of the house, who took with notice. Levenson then contracted in writing to sell to the defendant Becht, who paid down an earnest, without notice of the complainant's contract, and later, with notice, actual and constructive, after the bill was filed and lis pendens
recorded, paid or secured the balance of the consideration and took title, now of record. Becht was made a defendant by supplement to the bill. The defenses offered are —
1. That the complainant waived specific performance and elected to accept damages for breach of the contract. If she elected, and, relying upon the election, the owner sold the property to Becht, the complainant is not entitled to the extraordinary relief of specific performance. Meidling v. Trefz, 48 N.J. Eq. 638;Milmoe v. Murphy, 56 Atl. Rep. 292; affirmed, 65 N.J. Eq. 767.
It is established that, from the time the house was completed, in November, until the following January 27th, the parties were trying to adjust the complainant's claim for deficiencies in the structure with the object of consummating the sale, and that that was the purpose of a meeting on that day in the office of the owner's lawyer. There $200 was offered and rejected, and it is claimed, and supported by a number of witnesses, that the complainant's husband, who represented her throughout the deal, some time during the discussion offered to take back the down money and $500 for damages, which was also declined. Mr. Storch denies that he made the offer, and says that it was made to him, and that he promised to take it under advisement with his lawyer. His lawyer testified that *Page 50 
at the meeting Mr. Storch was offered and refused the down money only, and countered, that he would take it if paid his damages, but that he did not want the money and was insistent upon having the property. He also denied, saying the next day, in response to an inquiry from defendants' solicitor as to his client's attitude towards the $200 abatement offer, that the complainant stood by his offer (to take damages). None of the witnesses has given a true picture of what actually occurred. The meeting was undoubtedly animated. There were offers and counter-offers of settlement, and assuming, without deciding, that Mr. Storch expressed a willingness to take back the down money, plus $500, it was merely a proposition, not then entertained, and, as an after-thought, conveniently seized upon and pressed into service as an election. Taking the most favorable view for the defendants, it was an option to them, i.e., the land with an abatement or the return of the down money, and $500 damages. And it is plain that it was not made, or looked upon or understood by the defendants as a waiver of the right to the land, for, within a few days after the meeting, a demand was made by the complainant's solicitor for a performance of the agreement, and on February 10th following defendants' solicitor, by letter communication, tendered his client's readiness to carry out its terms and his willingness to resume the negotiations. The matter was thereafter left entirely to the lawyers, and though efforts were made by them to bring about a settlement, nothing was accomplished up to the time of the filing of the bill, March 13th, and even then negotiations were under way to carry out a proposition which had been pending, and which had been earlier suggested, to submit the question of abatement to arbitration, and a draft of an agreement to that effect was sent to the defendants' solicitor, with a copy of the bill, with a request that it be executed. There was never any mistaken belief upon the part of the defendants that the complainant's husband had forsaken her right to the performance of the contract, nor that, having expressed a willingness to take money damage, he was constant in his efforts to have its terms carried into effect. *Page 51 
It appears that the property was bought by the complainant and her husband for a home, and that occupancy on the day fixed for the transfer was of importance, as they had given up their right to their then apartment; and that realizing beforehand that the house would not be finished in time, and feeling that they would be without shelter, bought another house, the one in which their apartment was located. From this it is contended that the complainant's husband was minded to abandon the contract, and that it argues in support of the defendant's contention that he elected to take damages in lieu. A complete answer to this is that, after he bought his present home, he was as insistent as before upon closing the bargain with the defendants, and that they co-operated.
Tepperman testified that Mr. Storch said he did not want the house under any circumstances, and Levenson, referring to another occasion, uses substantially the same phrase in describing another alleged refusal to accept the house. No other witness gave testimony that he ever expressed any such sentiment, and in view of the later conduct of the parties the remark, if made, was either a loose expression or was loosely interpreted and translated into testimony, and is of no significance. The defendants have not sustained, by the weight of the evidence, the alleged facts upon which they rest the defense of waiver.
2. Laches. A bill for specific performance for the sale of land must be promptly filed after a definite refusal to perform.Ketcham v. Owen, 55 N.J. Eq. 344; Agens v. Koch, 74 N.J. Eq. 528.
Here there was no express refusal. There was a failure to agree upon terms of performance concerning which the complainant's husband had not relaxed in his efforts, nor the defendants in their apparent desire to agree, up until the filing of the bill, although the latter had secretly sold the property to Becht ten days before. The refusal of the defendants to perform came to the complainant only with the information that they had sold to Becht, and then, on the same day, or the next, the bill was filed. There was no lack of diligence. *Page 52 
3. Tender. The complainant was willing and demanded, and offered or tendered performance consistent with her meritorious claims for an abatement of the purchase price. More than that is not required. Worch v. Woodruff, 61 N.J. Eq. 78.
4. Bona fide purchaser. There is no pretense that Levenson is within the favored class. Becht took title upon condition that the consideration price be held in escrow and paid over or returned to him, depending on the outcome of this suit, and it is now in the possession of a stakeholder. He is not an innocent purchaser for value. To constitute one an innocent purchaser for value, and entitled to the protection of equity, or the Conveyance act (Comp. Stat. p. 1553 § 54), the consideration price must have been paid in full before notice of a superior claim. Haughwout v. Murphy, 22 N.J. Eq. 531; Bridgewater v.Ocean City Asso., 85 N.J. Eq. 379; affirmed, 88 N.J. Eq. 351;Schwarz v. Munson, 94 N.J. Eq. 754.
The complainant's contract was not void as to Becht, because it was not recorded as permitted by the Conveyance act. Section 116 of the act (Comp. Stat. p. 1573) provides for the voiding ofrecorded agreement for the sale of land as to subsequent purchasers for value, unless the vendee sues for specific performance within three months, and does not apply tounrecorded agreements. That provision is a limitation upon the right of action against subsequent purchasers with or without notice by vendees who chose to protect their equities by recording their contract. Gerba v. Mitruske, 84 N.J. Eq. 141.
5. The point that this is a suit to enforce a building contract, and that such suits will not, as a rule, be specifically enforced, is not well taken. The building had been substantially completed. It is proved that the wall plaster is not of the thickness and workmanship specified, and that there are many other deficiencies. The practice in equity is to enforce such agreements, and abate the purchase price to the extent of the difference in the value of the property between the substantial and precise completion, of which the cost is, in *Page 53 
most instances, the sole measure. The difference in this instance is appraised at $500.
Decree accordingly. There will be an adjustment of the rents,c., as of November 1st, 1924, and if the parties cannot agree it will be referred to a master.