The bill is to foreclose a purchase-money mortgage. The defendant Avon Building and Loan Association, second mortgagee in point of time, counter-claims to subordinate it to its mortgage. The complainant's mortgage of $11,000 was made January 26th, 1927, by one Briscoe to Ridgewood Company on a lot at South Orange and Fairview avenues, South Orange, then about to be built upon by Briscoe, and in contemplation of that happening it was stipulated in the mortgage that:
"The party of the second part hereto (mortgagee) agrees to subordinate this mortgage to the lien of a new first mortgage to be obtained upon said premises, said new first mortgage to be in a sum not to exceed seventy-five (75) per cent. of the cost of the land and building to be erected upon the same."
Ridgewood Company assigned the mortgage to the complainant. Briscoe started to build (had dug the cellar), and *Page 568 
then conveyed to Boyarsky Bordon, Incorporated, which finished the job, a six store two-story building, first floor of brick and hollow tile construction and the upper floor, six living apartments, of wood construction. The building and loan association undertook to finance the project for Boyarsky 
Gordon, Incorporated, to the extent of $70,000 and from time to time, as the work progressed, laid out that sum and more. While the building was in the course of construction Boyarsky Gordon, Incorporated, conveyed the premises to Lewis Construction Company, formed by the first named for the purpose of giving, and which executed the $70,000 mortgage to the building and loan association October 20th, 1927. The building was substantially completed in the summer of 1928. Demand was made of the complainant for a deed of subordination which was refused and when his mortgage matured, September 26th, 1928, he filed this bill to which the building and loan association counter-claims, praying specific performance of the agreement of subordination by the execution of a recordable instrument in writing certifying the subordination.
The answer to the counter-claim that the covenant to postpone was personal to Briscoe, the mortgagor, is insubstantial. That, manifestly, was not the intention of the parties; the test does not admit of the limitation and the complainant is estopped. That the agreement was not exclusively for Briscoe's benefit is obvious, for someone had to lend him on mortgage that he might function; it was also of no moment to the complainant's assignor by or to whom the money was loaned or who made or took the mortgage, for the personnel did not in the least affect the security of the assignor's mortgage, and the only reasonable meaning of the contracting parties was as the stipulation implies, that subordination to the extent of seventy-five per cent. of the cost of the building and land, should run to one venturing to supply the means, and the building and loan association having relied upon the faith of the covenant, the complainant, who knew, cannot escape the consequences of the broadcasted invitation to the investing public by protesting that the offer was only *Page 569 
to those who would lend to Briscoe to enable him to improve the mortgaged premises.
The complainant refused to execute a writing subordinating his mortgage to the $70,000 building and loan mortgage, insisting that it was for more than 75 per cent. of the costs of the land and building, and in this, as we now find the cost to be, he was justified, but that is not now the question. And it is also presently of no interest whether it is implied in the covenant that a certificate of subordination, for the purpose of the record, was to be given, for the utility of the document is spent and we have passed the stage for its specific performance and have reached the point where only the priority of lien of the two mortgages calls for a decision upon the counter-claim that the lien of the complainant's mortgage be decreed to be subordinate to that of the defendant's mortgage to the extent of seventy-five per cent. of the costs of the land and building.
The complainant, however, persists that inasmuch as the building and loan mortgage is for $70,000, and for more than seventy-five per cent. of the cost of the land and building, he is not obliged to subordinate, that is to say: unless the "new" mortgage is in form and amount for seventy-five per cent. or less of the cost the covenant is inoperative and this notwithstanding the building and loan association advanced $70,000 in the belief that it represented seventy-five per cent. and less of the cost of the land and building.
This does not commend itself and it was not the intention of the parties, nor is it the meaning of the covenant, the fair interpretation of which is that the lien of a new mortgage shall supersede the complainant's mortgage to the extent of seventy-five per cent. of the cost of the building and land; and as we read it, subordination inheres in the covenant and, graduated to the cost, is spontaneous upon meeting the requirements.
It is agreed that the cost of the land was $21,000. The sharp point in controversy is the cost of the building. That question was sent to a master whose findings of $14,148.79 were overruled on exceptions. The evidence before him was *Page 570 
of an outlay of upwards of $76,000 towards the construction and it is believable that that sum and more was laid out by those who advanced the funds and it is also believable that those who got it diverted some of it. The master, in his distrust, rejected all proof of cost outlay except that which was actually traced into the building. Further testimony was taken before the court. The opinions of contractors as to the costs of construction vary widely ranging from $80,000 down to $47,000, none of whom in the lower brackets, it is fair to venture, would take the job at their appraisals and none in the upper who could hope for such a find. A fair verdict, as counsel for the complainant suggest, would be $65,000 and counsel for the building and loan association is not averse. That sum, too, approximates the average of the irreconcilable view of the experts and it is adopted. The building and loan association will be decreed a priority of seventy-five per cent. of $86,000 — $64,500.