Upon objection to confirmation of sheriff's sale of the mortgaged premises for $1,000 confirmation was withheld unless and until the mortgagee purchaser agreed to credit the fair value of the mortgaged premises as of the date of the sale upon his claim for deficiency on the mortgage bond. This he agreed to do and thereupon the matter was referred to a special master of this court to take such testimony as should be offered by the parties touching the said value and to report his opinion thereon. The master has reported that value to be $20,000 and to this finding the mortgagor defendant, which is liable on the bond, excepts, claiming that the master should have fixed the fair value at about $27,000 *Page 75 
claimed to be the mean of four different values put upon the premises by as many different real estate experts, citing as authority for this contention O'Connor v. Arywitz, 112 N.J. Eq. 567.
The four valuations thus fixed were approximately $31,000, $33,000, $19,800 and $10,000 respectively, representing a wide divergence of opinion. It would appear that two of these experts were optimists, one a pessimist and one who might be called a conservative. The most optimistic fixed the present value at over $33,000, while the pessimist insisted that under present economic conditions the property was not worth more than $10,000, a span difficult to close; but the latter witness also testified that in normal times it would be worth $18,000, and all agreeing that times are not normal. If the rule suggested by the exceptant were to be adopted it will be seen that the master was not far removed from the result which would be thus obtained, the permissible mean under that rule being much lower than that claimed by exceptant. But the suggested rule is not the proper one, nor does the cited case support the argument. The "mean" between the high and low valuation was there taken because, as Vice-Chancellor Backes said, "a fair verdict, as counsel for the complainant suggest, would be $65,000 and counsel for the building and loan association is not averse," adding, "that sum, too, approximates the average of the irreconcilable view of the experts and it is adopted." There is no suggestion that the "average of the irreconcilable view" is the rule of thumb. And of course it is not. The court might there have accepted, or here accept, either the highest or the lowest estimate of value if the result obtained found support in competent evidence and seemed in accordance with sound reasoning, equity and justice; or, disapproving of all such estimates, fix its own value. The master himself, familiar with the mortgaged premises, and in my judgment entirely competent to attest real estate values in that vicinity, evidently considered the value of the conservative expert as resting in sound judgment and common sense and therefore adopted it. Such a finding by a competent master, amply supported by the evidence, is not to be lightly *Page 76 
disturbed and should be sustained unless palpably wrong. The master saw the witnesses, heard them testify, and could thus better appraise the weight which should be given to their testimony, while I have before me only the typewritten record. There is no suggestion here that the report finds no support in the evidence, but merely that the master should have extracted the "average of the irreconcilable view" and fixed it as the answer to the mathematical problem. The danger of such rule is obvious when the resulting temptation to exaggeration, inflationary or deflationary, is considered, and it might necessitate the selection by the court itself of appraisers whose valuation would be considered final, an end by no means desirable. The report being amply supported by competent evidence the exceptions will be overruled and the report confirmed.