This is a suit for the specific performance of a written contract for the sale of lands described in the contract as "Lots Nos 38, 40, 42 and 44 of Block G on map of lands of Deal Terrace, County of Monmouth and State of New Jersey." The contract is dated September 13th, 1944, bears a certificate of acknowledgement, and provides for the delivery of the deed on October 15th, 1944. By it the Leslie defendants agreed to sell and the complainant agreed to purchase the premises for the sum of $4,000, of which $100 was paid at the time the contract was executed. After execution and before the date fixed for performance there were negotiations for the inclusion in the sale and purchase of an electric refrigerator and some other articles of furniture. The contract was recorded in the Monmouth County clerk's office on November 14th, 1944. Before that date, however, and on October 19th, 1944, the Leslie defendants, by another written contract, agreed to sell the same property to the defendant Steiker (improperly named in the title of cause and in the bill as "Streiker"), for $4,500, and actually conveyed the premises to Steiker by deed dated November 8th, 1944, although actual settlement on this later contract was not made until November 17th, 1944, when the purchase price, less the sum of $750 retained by the attorney for the defendant Steiker to cover cost of anticipated litigation, was paid to the defendants Leslie. The deed was recorded in the Monmouth County clerk's office on the day settlement was made, that is, on November 17th, 1944. At that time both the Leslie defendants and the defendant Steiker, through his attorney who made the settlement, had actual notice of the recording of complainant's contract of purchase. The bill in this cause was filed on November 28th, 1944, but nolis pendens was ever filed.
By their answer the Leslie defendants claim that the contract was void because it was never acknowledged by them as required byR.S. 46:14-1; that it was abandoned by the complainant before the date fixed for performance because of some dispute concerning the furnishings touching which there had been negotiations; that they were duly notified to *Page 345 
this effect by complainant's agent, and that it was not until after they had been so notified that they sold and conveyed to the defendant Steiker.
The defendant Steiker defends on the ground that he is a bonafide purchaser for value without notice, although complainant contends that he had actual notice on November 5th, 1944, three days before his deed was executed and twelve days before settlement was actually made. On this complaint and these defenses issue was joined.
The hearing in this cause consumed two full days and a mass of testimony and numerous exhibits were put in evidence. On the fact issues raised by the pleadings I find as follows:
1. The complainant's contract was duly acknowledged by the Leslie defendants before Ira C. Smock, a prominent citizen of Asbury Park, New Jersey, engaged in the real estate and insurance business and duly authorized to take such acknowledgments. Both the Leslie defendants claim that no such acknowledgment was ever taken but I consider the testimony of Mr. Smock as the more reliable and accept it.
2. The claim of the Leslie defendants that complainant abandoned her contract must be decided against them. Both the Leslie defendants testified that after the contract with complainant was executed negotiations were had for the purchase by complainant of an electric refrigerator and some other items of furniture which were in the premises the subject of the sale; that there was an agreement to include in the sale an electric refrigerator at the price of $100 or $125, but that this agreement was entirely independent of the contract for the sale of the land; that subsequently Mrs. Leslie, who actually owned the premises the subject of the sale, decided to sell this refrigerator to a friend or relative and that upon the complainant being informed of that fact, Mr. Smock, acting for the complainant, informed the Leslies that unless the refrigerator was included in the sale the deal was off, and that Mrs. Reade did refuse to consummate the sale. This fact is emphatically denied by Mr. Smock who says he never had any such conversation with the Leslies and it is also denied by the complainant and her husband, and the documentary *Page 346 
evidence corroborates the complainant and her witnesses touching this question of abandonment. It appears that immediately after taking the Leslie's acknowledgment to the Reade contract of sale, Mr. Smock delivered the contract to a firm of lawyers in Asbury Park who immediately ordered title searches on the property. Title report was not received by this firm until October 23d 1944, and on that day he wrote a letter to the Leslies suggesting the following Monday as the date for settlement. Although October 15th had been fixed in the contract as the date for settlement, time was not of the essence. The Leslies made no reply whatever to this letter. After waiting several days for such a reply, a member of this law firm called on the Leslies and tried to arrange for a settlement date but they refused to make any such arrangement. A few days later and on November 8th, 1944, the attorneys for the complainant gave written notice to the Leslie defendants that they had designated "Monday, November 20th, 1944, at 2:00 P.M. at the office of the W.C. Burroughs Agency, 705 Mattison Avenue, Asbury Park, New Jersey, as the time and place of closing and make time of the essence." The evidence also shows that on that day complainant's attorney and Mr. Smock attended at the time and place designated for settlement with the balance of the purchase price in cash, but that the Leslie defendants did not appear and that, therefore, settlement was not made. Mr. Smock testified that on the first day of the final hearing he still had the cash, representing the balance of the purchase price, in his possession. Upon learning of the Steiker contract this suit was promptly begun. In view of these facts I feel that I have no alternative but to hold that there was no abandonment of complainant's contract.
This disposes of the defense of the Leslie defendants, and a decree must go against them.
Now as to the defendant Steiker. There is no doubt but that he entered into his contract for the purchase of the premises in question in entire good faith, and I am quite sure that he had no notice of the prior contract until after it was recorded on November 14th, 1944. Complainant contends that he had actual notice of her contract as early as *Page 347 
November 5th, 1944. She and her witnesses, four in number, consisting of her husband, her daughter, her daughter's husband and her then butler, who is not now employed by her, all testified that on the Sunday afternoon before the date of the general election in 1944, the defendant Steiker was called in to the Reade home, which immediately adjoins and is next door to the premises in question, and was asked by Mr. Reade about his interest in the property, and that he told Mr. Reade that he was contemplating purchasing it, whereupon Mr. Reade informed Mr. Steiker that Mrs. Reade had already bought, or had a contract to buy, it. The date is fixed by all of these witnesses as being the Sunday before election because the complainant's son, who was and is in military service, had come home to vote. That date was November 5th, three days before the date of the deed to Steiker, as election day was on November 7th. If this testimony is correct, then Steiker had actual notice of the contract long before it was recorded and before his deed was executed. However, Steiker testified that the correct date of this meeting was some time the latter part of November and not on November 5th, and fixes the time by the fact that he was then living in the premises the subject of this dispute; that he did not receive the keys to the house until November 8th, the date of his deed, and that it was not until some time after that date that he moved his furniture into the house and took up his abode there. His testimony touching the date of this meeting is fully corroborated by Colonel Bloomer, the State Director of Selective Service, and by Major Cooper, an army officer, both of whom were visiting Steiker on the day in question. Major Cooper accompanied Mr. Steiker on his visit to the Reade home. Colonel Bloomer fixes the date of this meeting as the 19th day of November, because he was out of the state on official business on November 5th and November 12th, the two preceding Sundays, and everyone agrees that it was on a Sunday that this meeting took place. The fact that complainant's son was at home on the day of the meeting is of no significance because, according to complainant's proofs, it was his custom to spend every week-end with his parents during this period of time. Complainant and her witnesses are evidently mistaken as to the exact date. *Page 348 
I find as a fact, therefore, that defendant Steiker had no notice whatever of complainant's contract prior to its being recorded. There is no doubt, however, but that before the date of settlement under his contract of purchase and the payment of the greater portion of the purchase price, Mr. Steiker, through his attorney, had actual notice of the recording of complainant's contract. The facts touching this notice are as follows: On the morning of November 8th, 1944, Mr. Steiker gave his attorney a check for the balance of the purchase price and authorized him to make settlement. The keys to the premises were delivered to Mr. Steiker by the Leslies at that time, and the Leslies repaired to the office of Steiker's attorneys in Hackensack and executed the deed to Steiker. No money passed on that day, however, as there were some old mortgages to be cleared up, and it was not until five days later, on November 13th, that the attorney mailed the deed from the Leslies to Steiker to the title searcher in Freehold for record; but the title man was instructed not to record the deed unless the record was clear. The deed was received by him on the morning of November 14th, about 10:30 A.M. On examining the records he discovered that complainant's contract had been recorded at 9:00 A.M. that morning and he immediately telephoned Steiker's attorney to that effect. The attorney then requested him to withhold the deed from record until further notice. The attorney then got in touch with Mr. Leslie who came to his office on the 17th, and was informed of the recording of complainant's contract. He told the attorney that the contract had been abandoned by the Reades and after some discussion about the possibility of an action by the complainant for specific performance, the attorney paid over to Leslie the balance of the consideration price, less the sum of $750 which he retained to pay the estimated costs of anticipated litigation.
Thus, it is seen that both the Leslie defendants and the defendant Steiker had notice that complainant did not consider her contract abandoned before the settlement was made. The knowledge that the complainant's contract had been recorded was sufficient to put all of the defendants on inquiry, and whatever puts one on inquiry is, in law, notice. The *Page 349 
burden of making adequate inquiry was on Steiker, but he failed to carry that burden. He cannot, therefore, be considered a bonafide purchaser for value because such a purchaser must have paid the full consideration price before notice of a superior equity.Storch v. Tepperman, 99 N.J. Eq. 48. This brings me to a consideration of a legal question, the answer to which, it is claimed, absolves Steiker from any liability to complainant.
After this cause was moved for final hearing, the solicitors of the defendants invoked the provisions of R.S. 46:21-3 and moved for a dismissal of the bill on the ground that no lis pendens
had been filed within the three months period prescribed by that statute. Failure to file a lis pendens was admitted, but the solicitor of the complainant argued that the statute had no application to this cause for the reason that the contract was not recorded until after the sale to the defendant Steiker had been consummated, and that the word "subsequent" as used in that statute means subsequent to the recording of the agreement of the sale. It then appeared from the pleadings that Steiker had received his deed on November 8th, 1944, and I believe he had no intimation to the contrary until after this suit was brought, although his attorney, who had full authority to act for him, well knew that title did not pass until the consideration money was paid on November 17th.
This was not a motion to strike, but to dismiss the bill before any evidence had been presented by either side to the controversy, and, of course, the defendants had not rested their case. The answer contains no reservation of the right to move to strike at the final hearing. Decision on the motion to dismiss was reserved until the conclusion of the final hearing, for two reasons: first, it was premature; and, second, the parties with their witnesses were all present in court and it was deemed best that the proofs should be taken at that time, particularly as the final hearing had previously been adjourned for several months on account of the absence of material witnesses.
Of course, the motion could not prevail as to the Leslie defendants, as failure to comply with the statute does not *Page 350 
render a recorded contract void as to the parties thereto, but only as to subsequent purchasers and encumbrancers. The statute provides that recorded agreements for the sale or purchase of real estate shall be absolutely void as against subsequent judgment creditors and as against subsequent purchasers and mortgagees for value of such real estate, unless the vendee, his heirs, c., shall commence an action for the specific performance of such agreement, or for its rescission, c., and shall file a notice of the pendency of such action, that is, alis pendens, within three months after the date fixed in such agreement for its consummation, or within three months after the happening of any of the other contingencies mentioned in the statute. The last paragraph of this statute reads as follows:
"If the plaintiff or complainant in any such action does not take steps to prosecute the same within six months after the filing of such notice, the chancellor or court in which such action is commenced may, upon application by any interested party, and upon notice to the plaintiff or his attorney or the complainant or his solicitor, declare the filing of such notice to be null and void and of no effect, and that the real estate mentioned in such notice shall be and remain discharged of all equities or claims founded on such agreement."
It will be noted that the time limit for the failure to prosecute the suit is based upon and counts from the date of filing of the notice, and not from the date of commencement of the suit. Hence the filing of the notice is as necessary as the commencement of the suit, and both steps must be taken to come within the provisions of the statute. It is conceded that no lispendens was filed in this cause. If the statute is applicable to complainant's contract, Steiker is not bound.
In Storch v. Tepperman, supra, it was held that this statute applies only to recorded contracts, and that unrecorded contracts are not affected thereby. That means contracts which are recorded at the time of the purchase, conveyance, mortgage or other lien which is attacked, is effected or consummated. In other words, the word "subsequent" as used in that act means subsequent to the date of recording. It seems clear, therefore, that the statute applies to complainant's contract as it was recorded three days before Steiker's purchase *Page 351 
was consummated. Steiker is, therefore, a "subsequent purchaser," that is, a purchaser subsequent to the recording of the Reade contract. That he had actual notice of the recording of that contract prior to settlement is of no consequence. It was so held in Lobsenz v. Koplow, 108 N.J. Eq. 529, and in Brody v.Keystone Holding Co., 111 N.J. Eq. 110.
The effect of these decisions, as I understand them, is that where the contract is recorded the statute controls, and the fact of actual notice is immaterial; but where the contract is not recorded at the time of the purchase or conveyance, actual notice will bind the purchaser or grantee because actual notice is always equal to constructive notice. Thatelbaum v. Neidorf,100 N.J. Eq. 236. Barring the statute, Steiker would be bound by actual notice, as I think he should be, and complainant would be entitled to a decree against him. But the legislature has said otherwise. With the wisdom of this rule of law as laid down by the statute, however much we may disapprove of it, this court can have no concern, as in such matters the will of the legislature is supreme. The construction of this statute by this court inLobsenz v. Koplow, supra, and Brody v. Keystone HoldingCo., supra, is controlling here and absolves Steiker from liability to the complainant. It is true that at the time this suit was begun on November 28th, 1944, the Reade contract was still valid, but by force of this statute it became void as to the defendant Steiker on January 15th, 1945, which was three months after the date fixed in the agreement for its consummation. Gerba v. Mitruske, 84 N.J. Eq. 141.
The bill will be dismissed as to the defendant Steiker. *Page 352