56 N.J. Super. 109 (1959)
151 A.2d 577
WILLIAM C. KOPPEL AND FLORENCE C. KOPPEL, HIS WIFE, PLAINTIFFS,
v.
OLAF REALTY CORP., A CORPORATION OF THE STATE OF NEW YORK, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided May 19, 1959.
*112 Messrs. Jacobson & Winter (Mr. Roland A. Winter, appearing), attorneys for plaintiffs.
Mr. Nathan Reibel, attorney for defendant.
SCHERER, J.S.C.
Plaintiffs sue for specific performance of a written contract which provides for the sale of real estate and the completion of a house thereon. They are the purchasers. The defendant is the present owner of the property, having purchased it at sheriff's sale upon the foreclosure of a second mortgage. Numerous legal defenses are interposed to the plaintiffs' claim for specific performance with an abatement, and the defendant counterclaims for possession of the premises which are occupied by the plaintiffs.
This suit is the culmination of litigation beginning in 1954, and a review of the prior litigation is necessary to a complete understanding of the conclusions herein reached.
*113 On September 30, 1954, plaintiffs and Jardine Estates, Inc. (hereinafter called "Jardine") entered into a contract for the sale by Jardine and the purchase by plaintiffs of a house which was under construction on land in the City of Summit, New Jersey. Specifications were annexed to the contract, and by its terms Jardine undertook to convey title by warranty deed. The contract was recorded October 13, 1954 in the Union County Register's Office. The price fixed was $38,000, of which $1,500 was paid upon the signing of the contract, which provided, among other things, that the purchasers would pay $300 per month, beginning December 1, 1954, on account of the balance of the purchase price. The monthly payments were to be applied first to the payment of taxes, then for fire insurance premiums, next for interest at 5% on the unpaid balances, and the remainder in reduction of the principal sum due. When the balance due, through these payments, had been reduced to $30,000, the seller agreed to execute and deliver a deed to the purchasers, who were then at liberty either to secure their own financing and pay off the balance due the seller, or to execute and deliver to the seller a bond and mortgage for $30,000, upon which they would make monthly payments of $200, to be applied for the same purposes as the payments under the contract. The purchasers agreed to keep the premises in good and substantial repair at their own expense during their occupancy. The seller undertook certain obligations concerning the completion of the house and reserved the right to sell or assign the contract.
A supplement or amendment to the contract was signed about December 30, 1954. It did not change the basic undertakings of the original executed contract, but it did increase the monthly payment to be made on the bond and mortgage to be given by the purchasers to the seller from $200 to $300 per month, and the seller undertook certain obligations with respect to completion. This supplemental or amended contract was not recorded.
*114 Dissension arose between the parties and Jardine, on December 12, 1955, instituted suit in the Union County Court, Law Division, against the purchasers for possession of the premises, alleging a default in the terms of the contract. The purchasers counterclaimed for damages allegedly resulting from the seller's failure to properly complete the work required of it under the contract and for improper performance of work already done. It should be noted here that the damages sought were limited to the claim for unfinished and substandard work, which the purchasers alleged required their spending money to complete and remedy. The case was tried to a jury, resulting in a judgment of no cause for action on the complaint and $10,000 damages to the purchasers on their counterclaim. This judgment was entered November 2, 1956. Jardine appealed and a review of the evidence in that case is found in Jardine Estates, Inc. v. Koppel, 24 N.J. 536 (1957). The Supreme Court sustained the dismissal of the complaint but directed that there be a retrial of the counterclaim. The result of the retrial was a jury verdict in favor of the purchasers on their counterclaim in the sum of $8,000. The judgment, entered January 23, 1958, was not appealed, nor has it been paid, although execution has been issued against Jardine. It is stated that Jardine is now insolvent.
During all of this time there was a direct reduction first mortgage on the premises, held by a financial institution, in the principal sum of $25,000, upon which monthly payments have continued to be made.
On January 25, 1956, approximately 15 months after the recording of the contract of sale, and prior to the first trial of the suit at law, Jardine conveyed the premises to Camp, Inc. The latter, on the same day, executed a second mortgage on the premises to Modern Funding Corporation in the sum of $12,500. Still on the same day, after executing the mortgage, Camp, Inc. reconveyed the premises to Jardine. On that day also, Modern Funding Corporation assigned the mortgage to Louis Margolis and Henrietta Margolis *115 (hereinafter called "Margolis"). All of the above-mentioned documents, with the exception of the assignment, were recorded on January 30, 1956 in the Union County Register's Office. The assignment was recorded in that office on February 16, 1956. On April 23, 1956, Jardine conveyed the premises to Plaza Realty Company. Despite the change in the title, Jardine continued to be the active litigant in the suit in the Union County Court. There was never any application by the new owner or owners to be substituted as parties.
On June 15, 1956, prior to the entry of the original judgment in the Union County Court, Margolis, as assignee of the second mortgage given to Modern Funding Corporation, instituted foreclosure action in this court in a cause entitled "Margolis v. Plaza Realty Company, et al., Docket No. F-2099-55." The Koppels were joined as parties defendant. They filed an answer on July 18, 1956, referring to the pending law action and alleging that their rights were superior to the rights of the plaintiffs in the foreclosure action and that they were entitled to a monetary credit, setoff, abatement or recoupment in such sum as might be determined in the law action to be due them from Jardine. Margolis sought to strike the answer, but this motion was denied by Judge Sullivan. As a result of this, a judgment was entered in the foreclosure action on November 1, 1956, in which it was adjudged, among other things, that the complaint be dismissed as against the Koppels and that, except as to them, all other defendants be debarred and foreclosed of their equity of redemption.
Following this, and after the entry of the $10,000 judgment on November 2, 1956, Margolis, on January 25, 1957, made a motion in the suit in the Union County Court to vacate that judgment. In connection with that motion, William W. Telsher, who stated that he was president of Olaf Realty Corp. (hereinafter called "Olaf"), a corporation of the State of New York, the defendant-counterclaimant in *116 the present action, filed an affidavit alleging that Margolis had assigned their mortgage to Olaf on November 15, 1956, but that this assignment had not been recorded "because it was felt that by continuing the action in the name of Louis Margolis and Henrietta Margolis it would expedite the conclusion of this matter and would not in any way effect the rights of any parties." Significantly, the notice of motion made by the attorney purportedly representing Margolis (but actually, according to the affidavit, representing Olaf) stated that it was made because the Margolises were necessary and indispensable parties to the law suit; that the Koppels' contract of sale "was prior to the said second mortgage held by Louis Margolis and Henrietta Margolis"; that the judgment was predicated on the breach of the contract of September 30, 1954 and had been brought to the attention of Margolis; and that the judgment in the law suit "is an offset against the amount owing under the terms of said contract of sale." Mr. Telsher also stated in his affidavit, dated January 24, 1957, that "This contract was prior to the second mortgage" and that Olaf "is acquiring this property subject to the rights of the parties under both the contract of sale and first mortgage." Telsher went on to depose that on January 9, 1957 the sheriff of Union County had sold the premises under an execution in the foreclosure action; that the property had been bid in by Margolis for a nominal sum; and that the latter had agreed to execute and deliver an assignment of the bid to Olaf. Olaf subsequently secured a deed from the sheriff on January 27, 1957. The motion of Olaf to intervene in the law suit and vacate the judgment was denied on February 28, 1957.
It is therefore clear that prior to the mandate of the Supreme Court in July 1957, setting aside the first judgment secured by Koppel against Jardine, Olaf had complete knowledge of the origin of the plaintiffs' claim, the nature of it, the fact that a jury had awarded $10,000 in damages against Jardine for unfinished and improper work under the *117 contract of sale, and had conceded that Koppel's judgment was an offset against the amount owing under the terms of the contract of sale.
Following the entry of the $8,000 judgment on January 23, 1958, the Koppels instituted the present suit, the complaint being filed March 4, 1958. At final hearing some testimony was taken in an attempt to show that the Koppels had not kept the premises in good repair, as required by the contract of sale. Otherwise, the facts above stated were not in dispute and the matter was submitted as one of law.
Twelve legal issues are framed in the pretrial order, but a discussion of all of them is not necessary in order to arrive at the conclusion herein reached. They may be compressed into two basic issues: (1) Are the plaintiffs entitled to specific performance, and (2) if so, what is the amount of offset, if any, to which they are entitled; or, to put it another way, how much are they required to pay the defendant to secure a deed to the premises?
It has been represented to the court that, if the plaintiffs are accorded specific performance, they will arrange their own financing and will not exercise the option given them in the contract to execute and deliver a purchase money bond and mortgage to the defendant, as successor in interest to Jardine. If plaintiffs are not entitled to specific performance, then the defendant, of course, is entitled to a judgment for possession and there must be an accounting.
The defendant's principal argument against plaintiffs' right to specific performance is that they have not complied with N.J.S.A. 46:21-3. This statute provides that every recorded agreement for the sale or purchase of real estate shall be void as against subsequent judgment creditors of the vendor, and against subsequent purchasers and mortgagees for value of such real estate, unless the vendee shall commence an action for specific performance of the agreement, or its rescission, within three months after the date fixed in such agreement for its consummation. There are other provisions of the statute not here applicable. It is argued *118 that the plaintiffs did not institute their suit within three months of the date fixed in the agreement for consummation.
As above stated, the contract was recorded October 13, 1954. It contains no calendar date for consummation but does provide a definite period of time within which a deed shall be delivered, i.e., when the purchasers, by installment payments, have reduced the balance due the seller to $30,000. The supplemental contract did not change these basic terms, and hence need not be discussed. Indeed, if this latter be considered the contract, then the statute is no defense because the supplemental contract was not recorded and the statute applies only to recorded contracts. Reade v. Leslie, 137 N.J. Eq. 343 (Ch. 1945); Storch v. Tepperman, 99 N.J. Eq. 48 (Ch. 1926).
Since Jardine instituted its suit on December 12, 1955, it is evident that the purchasers, by making the monthly payments provided for in the contract, could not have reduced the balance of the purchase price to $30,000 by that date. There is no proof that any payments other than those required by the contract have ever been made. If the $8,000 judgment finally recovered against Jardine by the Koppels on their counterclaim be adjudged a credit against the contract price, this will reduce the balance due on the contract below $30,000, thus fixing a date for the consummation of the contract.
The judgment for $8,000 was entered January 23, 1958. The lis pendens in this suit was filed, as required by N.J.S.A. 46:21-3, on May 22, 1958. This suit was started March 4, 1958. The filing of the notice of lis pendens is as necessary as the commencement of suit, and both steps must be taken to come within the provisions of the statute. Reade v. Leslie, supra. If we measure the three-month period from the entry of the judgment on January 23, 1958, the suit was started within three months of that date. On the other hand, if we allow the 45 days for an appeal (R.R. 1:3-1(b)), which is the earliest date upon which the Koppels, in view of the history of the litigation, could be sure that *119 their judgment was final and could not be set aside, this would bring us to March 9, 1958. Taking this date as the date for consummation, the lis pendens was filed within three months. The suit, too, was instituted timely, and the statute has been complied with. As stated in Stack v. Sobocinski, 100 N.J. Eq. 414 (Ch. 1927), the time for performance of an installment contract runs from the date the agreement requires the purchaser to take title and the three-month limitation is computed from that date. I find that the date for performance in this case was March 9, 1958.
Brody v. Keystone Holding Co., 111 N.J. Eq. 110 (Ch. 1932), and Bramall v. Walton, 23 N.J. Super. 360 (Ch. Div. 1952), are not to the contrary. In the latter case the contract was dated in 1950. It was recorded by the purchasers in 1951 and, although it was evident from its terms that the purchasers could have demanded a closing at that time, it not being an installment contract, they did not institute their suit until 1952.
The question of constructive or actual notice is not applicable to this case, since the contract was duly recorded. Reade v. Leslie, supra.
The action at law in which the plaintiffs filed their counterclaim does not bar this suit. The doctrine of election of remedies is not here applicable. The plaintiffs did not elect inconsistent remedies. There were two separate and distinct undertakings by the seller in the contract, one to complete the house and the other to convey title. Plaintiffs counterclaimed for damages for the breach of the agreement to properly complete the house, not for damages for failure to convey title. They did not take any action with respect to the conveyance of title until this suit and, in fact, could not have properly done so until their rights in the former suit were established. The suit at law was not inconsistent with, nor did it result in a waiver of, their right to compel the seller, or its successor in interest, to specifically perform its contract to convey. In Longo v. Reilly, 35 N.J. Super. 405 (App. Div. 1955), certification *120 denied 25 N.J. 45 (1957), the court pointed out that there may be two causes of action, one at law and one in equity, arising out of the same factual situation, and a judgment in one is not conclusive as to the other where there are different issues and subject matters. This is the situation here. Thus, the defenses of election of remedies and res adjudicata must be overruled, as they were in the above cited case and for the same reasons.
The defendant's argument that the judgment in the law suit is not an offset against the purchase price is without merit. It has been repeatedly held in this State that there may be a specific performance of a contract involving the building and sale of a house, with an abatement of the purchase price for uncomplete or improper workmanship in the building by the builder. Storch v. Tepperman, supra; Jersey Estates Corporation v. Weintraub, 140 N.J. Eq. 216 (Ch. 1947). Both of these cases state the rule to be that there may be a specific performance of a contract of sale with an abatement to the vendee when the vendor has failed to complete the building in accordance with the agreement. Some of the defenses interposed to the plaintiffs' right to relief here are exactly the same as those set up by the defendant in the Storch case. While the defendant here is not the original party to the contract, its rights derive from the vendor therein and are subject to the liabilities imposed upon the vendor by that contract.
Plaintiffs argue that Olaf, by reason of its participation in the law action, is estopped to question not only the right to an abatement, but the amount of the abatement. There can be no doubt that the proceedings taken by Olaf in the law suit amount to an admission that it considered itself bound by the judgment therein. The effect of the dismissal of the foreclosure complaint as to the plaintiffs was an adjudication that the plaintiffs' claim was superior to the lien of the second mortgage owned by Olaf. Certainly, the defendant did not go to the trouble and expense of attacking the plaintiffs' claim in the other two suits for *121 the mere enjoyment of it. As was aptly said in Stretch v. Watson, 6 N.J. Super. 456 (Ch. Div. 1949), affirmed and modified 5 N.J. 268 (1950), a party will not be permitted to play fast and loose with the courts, nor to assume a position in one court entirely different or inconsistent with that taken by him in another court or proceeding with reference to the same subject matter or thing. See also, Aljian v. Ben Schlossberg, Inc., 8 N.J. Super. 461 (Law Div. 1950). While the proceedings in the other courts were taken in the name of Margolis, they were acting for Olaf (see Telsher affidavit, par. 5). The doctrine of equitable estoppel applies here because the defendant has heretofore performed acts and made admissions inconsistent with its present claim. The plaintiffs have acted in reliance upon the defendant's prior admissions and will suffer injury if the defendant is allowed to change its position. 3 Pomeroy's Equity Jurisprudence (5th ed.), sec. 801, p. 176; Burke v. Gunther, 128 N.J. Eq. 565 (Ch. 1941).
Defendant was well aware of the purpose of the law suit, but it did not make any effort to intervene therein to defend against the counterclaim prior to the retrial, as it could have done under R.R. 4:37-1, although it had become the owner of the premises, having secured a sheriff's deed in the foreclosure action on January 27, 1957. It contented itself, however, with standing by to see what the result of the retrial would be. It will not now be heard to complain that its rights were adversely affected.
There will be a judgment for the plaintiffs for specific performance of the contract and the defendant's counterclaim will be dismissed.
The final problem to be resolved is whether plaintiffs are entitled to any offset against the balance due on the contract. They claim as an offset the $8,000 judgment, plus costs allowed in the law suit, with interest at 6% on both sums, together with the amounts paid pursuant to the contract of sale. The defendant contends that plaintiffs are entitled to no offset, or, alternatively, that if an offset is *122 granted it cannot reduce the balance due on the contract below $30,000. It argues that the contract contemplated that Jardine would have the right to place a mortgage up to $30,000 on the premises and, therefore, it has the same privilege, being in privity with Jardine.
The rights of the defendant cannot rise higher than those of Jardine. The defendant concedes that, under the rule in Boylan v. Loy Corporation, 128 N.J. Eq. 460 (Ch. 1941), affirmed 130 N.J. Eq. 203 (E. & A. 1941), its title relates back to the date of the mortgage. Olaf argues, however, that, since at the time the second mortgage was given to its assignors there was due on the first mortgage only $25,000 and Jardine had the right to mortgage the premises up to $30,000, it is entitled to the difference between the principal amount due on the first mortgage and $30,000. This, of course, overlooks the obvious fact that if the title had remained in Jardine the plaintiffs would have been entitled to an offset against Jardine in whatever amount was necessary to make them whole, regardless of the $30,000 provision. Defendant is in the same position.
Defendant cites as authority Krich v. Zemel, 99 N.J.L. 191 (E. & A. 1923). That case, however, supports the plaintiffs' position because it holds that where an easement was given subject to, and with notice of, the existence of a first mortgage, the foreclosure of that mortgage cut off the easement. By analogy, the rights of the defendant were subject to being cut off, reduced or extinguished by improper actions of Jardine, its predecessor in title. This defendant is not in the position of an innocent mortgagee without notice, as the facts above stated clearly demonstrate. The defendant was well aware that Jardine's equity in the property might well be reduced by the result of the law suit. The equities in this case are all in favor of the plaintiffs. Neither Reinfeld v. Petti Construction Co., 109 N.J. Eq. 588 (E. & A. 1932), nor O'Connor v. Arywitz, 112 N.J. Eq. 567 (Ch. 1933), cited by the defendant, is in point. Both of these cases involve written postponements of *123 prior mortgages to the lien of subsequent mortgages. Plaintiffs did not agree to postpone their lien but have consistently asserted its priority to that of the defendant.
The plaintiffs will be allowed as an offset against the balance due on the contract the $8,000 judgment against Jardine and the costs of that suit, with 6% interest on these sums, plus the amount of any payments made by them in reduction of the purchase price. The evidence is not clear as to the treatment to be accorded the payments made on the principal of the first mortgage, nor those made for taxes and insurance. If counsel cannot agree on how these are to be treated, I will hear argument prior to the entry of judgment. If the amount of the offset exceeds the balance due under the contract, the plaintiffs shall be entitled to retain their claim filed with the receiver or trustee in the insolvency of Jardine to the extent necessary to fully liquidate the offset. If the offset is sufficient to make the plaintiffs whole, they shall assign their claim against Jardine to Olaf.
A judgment may be presented in accordance with these conclusions. Costs to the plaintiffs.