171 N.J. Super. 39 (1979)
407 A.2d 1256
HOWARD LIEBERMAN, M.D., PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
EMPLOYERS INSURANCE OF WAUSAU, DEFENDANT-RESPONDENT AND CROSS-RESPONDENT, AND ROBERT MCDONOUGH, ESQ., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 1979.
Supplemental Memoranda Received September 19 and 21, 1979.
Decided October 22, 1979.
*43 Before Judges SEIDMAN, MICHELS and DEVINE.
Mr. Leonard Rosenstein argued the cause for appellant, Robert McDonough (Messrs. Feuerstein, Sach & Maitlin, attorneys; Mr. Rosenstein on the brief).
Mr. Leonard J. Felzenberg argued the cause for respondent and cross-appellant Howard Lieberman (Mr. Felzenberg and Mr. Richard A. Feldman on the brief).
Mr. James C. Orr argued the cause for respondent Employers Insurance of Wausau (Messrs. Lum, Biunno & Tompkins, attorneys; Mr. Orr of counsel; Mr. Robert F. Priestley on the brief).
The opinion of the court was delivered by SEIDMAN, P.J.A.D.
Howard Lieberman, a physician, instituted a suit for damages against Employers Insurance of Wausau (Employers), from whom he had obtained a professional liability insurance policy, and Robert McDonough, an attorney retained by the insurance company to represent him in the defense of a medical malpractice action. He charged that the insurer breached the contract by settling the malpractice claim without his consent and that the attorney violated the attorney-client relationship by participating in the settlement with knowledge that plaintiff wished the matter to go to trial. He sought the recovery of insurance premium surcharges assessed against him allegedly as the result of the settlement.
The trial judge, sitting without a jury, granted the insurance company's motion for involuntary dismissal of the action at the close of plaintiff's evidence, but denied that made on behalf of the attorney. At the conclusion of the entire case, he found in favor of plaintiff and entered judgment against the attorney in *44 the sum of $27,762 plus costs. The attorney appealed. Plaintiff cross-appealed from the dismissal of his action against the insurance company.
The questions on appeal are whether an insured under a professional liability policy may withdraw his previously given written consent (required by the policy) to a settlement of a malpractice claim; whether the attorney retained by the insurer to represent the insured breached the duty owed by him to the latter and, if plaintiff is entitled to recover against either or both defendants, how damages are to be measured.
Employers first issued a professional liability policy to Dr. Lieberman in 1968, insuring him against medical malpractice claims. The policy was renewed annually thereafter until 1971, when another company took over the coverage. A clause in the policy empowered the insurer in the matter of claims to
... make such investigation and negotiation and, with the written consent of the insured, such settlement of any claim or suit as the company deems expedient.... [Emphasis supplied]
During the times here involved an insurance premium surcharge program was in effect by agreement among the carriers, the broker and the New Jersey Medical Society, and with the approval of the Commissioner of Insurance. Under the program an insured physician who acquired two chargeable claims within a stated period, the length of which depended upon the type of practice, would be subject to the assessment of a 50% premium surcharge. A third chargeable claim within that period would result in a 150% surcharge. All surcharges were to remain in effect for three years. A claim would be deemed chargeable if (a) the Society's medical review and advisory committee determined that the claim was indefensible, or (b) the claim was settled for an amount in excess of $3,500, or (c) a judgment of more than that amount was entered against the insured physician. In case a claim was successfully defended or the amount ultimately paid by settlement or to satisfy a judgment did not *45 exceed $3,500, any surcharge imposed by reason of a committee determination of indefensibility would be refunded.
A former patient sued Dr. Lieberman and his associate for malpractice, in 1970, alleging that an arteriogram had been negligently administered during the course of treatment, resulting in the loss of use of his hands. The suit papers were forwarded to Employers. McDonough was retained by the carrier to defend the lawsuit and the physicians were notified of the assignment. Subsequently, a medical review and advisory committee determined that the claim was not defensible. A representative of Employers called upon Dr. Lieberman and his associate, advised them of the determination and obtained their written consent authorizing the insurance company to settle the claim within the limits of the policy. McDonough was informed of the action taken.
Sometime later, Dr. Lieberman received information from other physicians, one of whom was treating the same patient for an unrelated illness, that the patient appeared to be using his hands quite normally. Dr. Lieberman called the claims department of Employers and suggested that in light of evidence that the claimant might be malingering the case should go to trial. This was followed, in October 1972, according to Dr. Lieberman, by a letter in which he withdrew the settlement authorization. The insurer undertook an undercover investigation of the claimant and also authorized McDonough to go to the Mayo Clinic in Minnesota, where the claimant had been a patient, and confer with the treating physicians there. McDonough's report to Employers led it to conclude that "There was going to be a credibility question here, we could not establish the fact that he was malingering."
Dr. Lieberman said at trial that he called Employers again in January 1973, reiterating his demand that the case go to trial. He was told of the possibility that the claim could be settled below the surcharge threshold. He wrote to Employers that "no settlement is to be made in the case of DeSarno v. Lieberman, *46 for any particular amount until said amount is agreed to by both Dr. Ambrose and myself." A copy of the letter was sent to McDonough. Thereafter, Employers advised Dr. Lieberman that "based upon consents that were previously given, negotiations have been in progress prior to the receipt of your letter, and accordingly, must advise you we are unable to comply with your request." Dr. Lieberman said he then called McDonough, explaining that he wanted the matter tried, to which McDonough responded that his job was to do what the doctor wanted and if he wanted the case tried, it would be tried.
McDonough continued his trial preparation, conferring with Dr. Lieberman on several occasions. After numerous adjournments, the case was eventually assigned for trial on February 1, 1974. Although McDonough had kept Dr. Lieberman aware of the trial status of the case, he apparently did not inform him of ongoing settlement discussions. On the day of trial Dr. Lieberman was placed "on call." A settlement conference took place in chambers during which the claimant's demand was reduced to $50,000. McDonough telephoned the insurer and was instructed to settle the case for that amount. Whether McDonough notified Dr. Lieberman of the outcome is in dispute; McDonough testified that he did so immediately, but Dr. Lieberman claims he was not aware of the settlement until the Fall of that year when he discovered that he had been assessed a premium surcharge of 150% imposed because, in addition to the claim in question, two other chargeable malpractice claims which had been asserted against him were settled in 1974 for amounts in excess of $3,500.
This litigation followed, with the result noted above.

I

Withdrawal by insured of consent to settlement
We address, first, the issue of whether, where a liability insurance policy such as the one here involved requires the insured's written consent to the settlement of a claim and such *47 consent is given, the insured may revoke or withdraw the consent before the settlement is effected. On the motion for involuntary dismissal, the thrust of the insurer's argument was, as it is on appeal, that by signing the form authorizing the insurer to settle the claim, the insured thereby waived his right of consent and "once waived always waived," absent a provision in the policy permitting the withdrawal of such authorization. The trial judge, in granting the motion, simply expressed the view "that the doctor is bound by his written consent ... and the doctor's company had a right to rely on that consent ... and got the wheels in motion and settlement in motion...." We observe, parenthetically, that the insurance policy required the written consent of the insured only with respect to settlement, and not to negotiations between the insurer and the claimant with a view toward a possible adjustment of the litigation.[1]
The insurer postulates that plaintiff's consent, notwithstanding his subsequent attempt to withdraw it, constituted a waiver of his right to demand that the case be tried. It invokes the established principle that waiver is the intentional relinquishment of a known right, East Orange v. Bd. of Water Com'rs., etc., 41 N.J. 6, 17 (1963); West Jersey Title, etc. Co. v. Industrial Trust Co., 27 N.J. 144, 152 (1958), and maintains that the waiver was not revocable. But the statement of a principle, despite a superficial appearance of pertinency, does not necessarily establish its applicability. This is particularly true in the case of "waiver," for, as the court explained in Merchants Ind. Corp. v. Eggleston, 37 N.J. 114, 130 (1962), "the term is used loosely to embrace a number of concepts," so that it would be a mistake to *48 apply a definition, useful for one purpose, to a situation for which it was not intended. See 5 Willinston, Contracts (3d ed. Jaeger 1961), § 679 at 245.
We are not at all convinced that waiver is the relevant doctrine here. In our view, the insured's written consent to a settlement, required by the policy, ought not to be equated with the kind of voluntary giving up of a known right that creates an irrevocable waiver. Under the ordinary liability insurance policy, the insurer reserves to itself full control of the settlement of claims against the insured, subject, of course, to a duty of exercising good faith in settling claims. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 492 (1974). The carrier makes itself the agent of the insured in this respect. Ibid. But in the case of a professional liability insurance policy, as here, the insurer's control over the settlement of claims, apart from good faith considerations, is circumscribed by the contractual provision for obtaining the insured's written consent thereto. The insured's role under the contract, in this regard, is the giving or withholding of authorization to settle. If the insured should refuse to consent to a settlement, the litigation would no doubt proceed to trial. But, in the context of the insurance contract, we do not view that incidental result as flowing from the insured's exercise of a right to demand that the case be tried. Nor do we deem the extending of settlement authorization to be a relinquishment of such right. Rather, since the insurer acts as the insured's agent in such matters, and the extent of the insurer's authority, or limitation thereon, is derived from the insurance contract, the consent requirement clearly relates essentially to the exercise of that authority, and does not rise to the level of a specific contractual right to insist upon a trial. In the absence of a policy provision that the consent, once given, may not be withdrawn, or of proof that the insurer has acted upon such consent to its detriment, we discern no sound reason for holding the consent to be irrevocable (except possibly, as noted earlier, where the withholding of consent, or its withdrawal, *49 may be unreasonable, on which, we repeat, we express no opinion at this time).
Employers' motion for a judgment of involuntary dismissal of the complaint as to it should not have been granted. The trial should have continued and, upon the close of the evidence, the trial judge should have determined, with appropriate findings of fact, whether the settlement was a breach of the contract of insurance. Accordingly, the dismissal of the plaintiff's complaint against Employers should be reversed and the matter remanded for a new trial. On the issue of damages, see Point III, infra.

II

Liability of attorney to insured
The argument advanced on behalf of the attorney is, in substance, that although he may have been present when the malpractice case was settled, he was, in reality, "nothing more than a messenger boy" with respect to it. He maintains, further, that if the settlement was a breach of the insurance contract, the breach was that of the insurer, and that he merely acted as its agent. The attorney completely misconceives the import of the action brought against him and his responsibility to the plaintiff.
Plaintiff correctly argues that McDonough, as his attorney, undertook duties independent of his relationship with Employers. An attorney provided by an insurance company to represent an insured defendant owes that person the same unswerving allegiance that he would if he were retained and paid by the defendant himself. Newcomb v. Meiss, 263 Minn. 315, 116 N.W.2d 593, 598 (Sup.Ct. 1962); Jackson v. Trapier, 42 Misc.2d 139, 247 N.Y.S.2d 315, 316 (Sup.Ct. 1964). While he owes to both a duty of good faith and due diligence in the discharge of his duties, the rights of one cannot be subordinated to those of the other. Imperiali v. Pica, 338 Mass. 494, 156 N.E.2d 44, 47 (Sup.Jud.Ct. 1959). Consequently, whenever counsel in such case *50 has reason to believe that the discharge of his duty to the insured would conflict with the discharge of his duty to the insurance carrier, he cannot continue to represent both. Hammett v. McIntyre, 114 Cal. App.2d 148, 249 P.2d 885 (D.Ct.App. 1952); Reynolds v. Maramorosch, 208 Misc. 626, 144 N.Y.S.2d 900 (Sup.Ct. 1955); cf. Williams v. Bituminous Cas. Corp., 51 N.J. 146, 149 (1968); and see Keeton, "Liability Insurance and Responsibility for Settlement," 67 Harv.L.Rev. 1136, 1170 (1954). See also, DR 5-105(B), Disciplinary Rules of the Code of Professional Responsibility.
The trial judge here found, with support in the record, that McDonough knew that Dr. Lieberman had withdrawn his consent to a settlement and expressed a desire that the case be tried. He stated that McDonough was obligated to keep track of settlement discussions, and to inform Dr. Lieberman accordingly, and also to advise the doctor of any conflict of interest that might exist. He found further that plaintiff believed that the case would go to trial and was not told of the settlement. He said that McDonough should have spoken to Dr. Lieberman about it and if the latter refused to consent to the settlement the attorney should have called the insurer and prevented the settlement. Furthermore, according to the trial judge, Dr. Lieberman should have been advised to engage another lawyer in view of the conflict. The trial judge concluded that McDonough breached the duty he owed to Dr. Lieberman and the breach "caused the insurance premium and surcharge to come into play."
While we do not necessarily subscribe to everything that the trial judge said on the subject, we are satisfied that McDonough's representation of plaintiff in the malpractice lawsuit obligated him to advise the physician of the implications and possible consequences of the dispute with the insurer over the revocation of the settlement authorization, including the probability of a conflict of interest which would either require McDonough to withdraw from the case or, at least, to advise Dr. *51 Lieberman to retain other counsel to represent him with respect to that controversy. To this end, McDonough should have disclosed to Dr. Lieberman all facts and circumstances which, in his judgment, were necessary to enable his client to make an intelligent decision in the matter. Lysick v. Walcom, 258 Cal. App.2d 136, 65 Cal. Rptr. 406, 414 (Ct.App. 1968). Furthermore, there can be no doubt that McDonough should have told Dr. Lieberman on the scheduled trial date that a settlement was imminent, solicited his views with respect to it and also discussed with him the courses of action which were open to him if he persisted in objecting to the settlement. In the latter case, we think that McDonough was duty-bound to bring the matter to the attention of the trial judge and seek a continuance so as to enable Dr. Lieberman to take such action as he might deem appropriate in the circumstances. Because of the attorney's omissions in these respects, we concur in the trial judge's conclusion that McDonough breached the obligations and duties imposed upon him by the attorney-client relationship that was created when he undertook the defense of the malpractice action. Whether the proofs at trial established that the attorney's breach of duty proximately resulted in damage to plaintiff is discussed below.

III

Measure of Damages
The trial judge properly expressed concern over the question of damages in that "I would have to speculate as to what the jury would have done in the DeSarno case that [sic] went to trial, if it went, no cause of action or under $3,500...." However, when plaintiff's counsel argued that the premium surcharge fixed the damages, "[t]hat is the breach, that fixed DeSarno [sic] in the program," the trial judge agreed and *52 entered judgment against McDonough in the amount of $27,762.[2] In doing so the trial judge fell into error.
An attorney who breaches the duty owed to his client is responsible for the loss proximately caused the client by such dereliction. Hoppe v. Ranzini, 158 N.J. Super. 158, 164 (App.Div. 1978). If the malpractice charged relates to the prosecution or defense of a lawsuit, it is the client's burden to show by a preponderance of the evidence that proper handling of the matter would have resulted in the recovery of a favorable verdict and collection of the same, see Hoppe v. Ranzini, supra, or, in the case of a defense, that there would have been no judgment against the client or that the outcome of the litigation would otherwise have been favorable to the client. See Campbell v. Magana, 184 Cal. App.2d 751, 8 Cal. Rptr. 32, 33 (D.Ct.App. 1960); Coon v. Ginsberg, 32 Colo. App. 206, 509 P.2d 1293, 1295 (Ct.App. 1973); Oda v. Highway Ins. Co., 44 Ill. App.2d 235, 194 N.E.2d 489, 498 (Ct.App. 1963); cf. Gay & Taylor, Inc. v. American Cas. Co. of Reading, Pa., 53 Tenn. App. 120, 381 S.W.2d 304, 306 (Ct.App. 1963). See also, Annotation, "Measure and elements of damages recoverable for attorney's negligence with respect to maintenance or prosecution of litigation or appeal," 45 A.L.R.2d 62 (1956).
This case does not involve a situation where, because of the attorney's negligence, a money judgment is obtained against the client. Cf. Fuschetti v. Bierman, 128 N.J. Super. 290 (Law Div. 1974). As stated earlier, the loss claimed by the plaintiff herein is the amount of the premium surcharge occasioned by the settlement. However, contrary to the trial judge's holding, the attorney's breach of duty clearly did not produce the surcharge. It was triggered under the program, not by the settlement *53 but by the medical committee's prior determination that the claim was indefensible. Only in case a trial of the medical malpractice claim in question would have resulted in a judgment absolving the physician of liability or otherwise terminating the litigation in his favor, including an adverse verdict not in excess of $3,500, would the surcharge have been lifted or, if paid, reimbursed. Plaintiff's complaint is that the settlement precluded such trial. Nevertheless, it would still be incumbent upon him to show by a preponderance of the evidence that the DeSarno case was defensible and, had the settlement not occurred, the outcome of a trial would have been favorable to him. If it should appear, however, that it was reasonably probable a verdict in excess of $3,500 would have been returned against him at such trial, then the surcharge would remain in effect, just as it did as a consequence of the settlement. In that event plaintiff would have sustained no recoverable loss.
The judgment against McDonough must be reversed and the matter remanded for a new trial, which, as to him, shall be limited to the issue of damages.
Reversed and remanded for further proceedings consistent with the foregoing. Jurisdiction is not retained.
NOTES
[1] Whether, under a settlement clause in a professional liability policy requiring the insured's consent, such consent may be unreasonably withheld by the insured, or, once given, may be withdrawn without good cause prior to settlement, was not raised at trial and is not before us on this appeal. We express no opinion on the matter. See, however, Transit Cas. Co. v. Spink Corp., 78 Cal. App.3d 475, 144 Cal. Rptr. 488 (D.Ct.App. 1978).
[2] It should be noted that plaintiff does not contend that there would have been no surcharge but for the settlement. He concedes that the two additional claims would have resulted in a surcharge in any event, but he maintains that it would have been only 50% instead of 150%.